UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL RICHARD JACKSON,

        Petitioner,                     Case No. 2:11-cv-419

v.                                        Honorable Gordon J. Quist

ROBERT NAPEL,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner is serving a term of 15 to 35 years, imposed by the Calhoun County Circuit Court on November 20, 2008, after a jury convicted Petitioner of first-degree home invasion, assault with intent to commit armed robbery, felony firearm, felon in possession of a firearm, and second habitual offender. In his *pro se* petition, Petitioner raises four grounds for relief, as follows:

    I.      Petitioner is entitled to a new trial where the trial court denied his request for new appointed counsel.

    II.     Petitioner is entitled to a new trial where the trial court failed to honor his request for self-representation.

    III.    Petitioner is entitled to a correction in the scoring of the offense variables where the trial court erred in denying a reduction of offense variable 8.

    IV.    The trial court erred in failing to remove one of the jurors from the panel where that juror worked with one of the testifying witnesses at Petitioner's trial; Battle Creek Police Officer Anthony Perrin.

Respondent has filed an answer to the petition (docket #8) stating that grounds I and II should be denied for lack of merit, that ground III should be denied because it is a noncognizable state law claim which has no merit, and that ground IV was never raised before the Michigan Court of Appeals and is meritless.  Upon review and applying the AEDPA standards, I find that grounds I, II, and III are without merit, and ground IV is procedurally barred.  Accordingly, I recommend that the petition be denied.

As noted by the Michigan Court of Appeals, the state prosecution arose from an April 25, 2008, incident during which Petitioner and another man broke into the home of Shaketta Patterson, where she lived with her infant daughter, while her friends Danielle McCord and Keedra Cooper were visiting and robbed the women at gunpoint.  *See* docket #18, p. 1.  The women were in the living room drinking and talking when they heard a loud noise at the back door, which sounded like someone hitting or kicking the door with great force.  After they heard the noise a second time, Patterson took the baby and hid in the baby's bedroom with McCord.  Cooper initially hid in Patterson's room, but then came to the baby's room with the other women.  Both Cooper and Patterson attempted to call 9-1-1 and while they were on the phone, Petitioner and another man, Ortez Smith, came in the back door.  *See* docket #14, pp. 56-116.

Petitioner and Smith, who were both wearing scarves as masks and carrying shotguns, forced themselves into the baby's bedroom.  Smith told Petitioner to take Cooper to the living room and Smith complied, ordering Cooper to lie down at gunpoint.  Smith ordered Patterson to stay and threatened to kill both her and her baby.  *Id*. at 63-99.  Petitioner and Smith then looted the house, taking purses, wallets, phones, keys and money.  After the men left the house, Petitioner drove away, but Smith returned to grab a container of baby wipes.  Battle Creek Police Officer Anthony Perin stopped the car that Petitioner was driving and arrested him, while Smith fled the

scene. When the women approached the car to identify Petitioner, he stated, "Tell them it wasn't me." *Id.* at 73-128.

When Petitioner was arrested, Officers Perin and Jamie Lapratt found a wallet belonging to one of the victims, a sweatshirt matching the description of the sweatshirt worn by Petitioner during the break-in, and a shotgun in Petitioner's car. Petitioner waived his Miranda rights and told Officer Perin that he was with a friend and was experiencing car problems. However, Petitioner could not remember his friend's name and could not explain why the victim's wallet was in the car. *Id.* at 64-65, 105, 137-154. At trial, Petitioner denied any involvement with the crime. *Id.* at 183.

Petitioner appealed as of right to the Michigan Court of Appeals. In his brief, Petitioner asserted that he was entitled to a new trial where the trial court denied him his request for new appointed counsel and where it failed to honor his request for self-representation. Plaintiff also asserted that the trial court erred in denying a reduction in the scoring of offense variable 8. The Michigan Court of Appeals affirmed Petitioner's conviction on April 20, 2010. *See* docket #18. Petitioner then appealed to the Michigan Supreme Court, asserting the same claims as those raised in the Michigan Court of Appeals, plus an additional claim that the trial court failed to remove a juror despite the fact that the juror knew and worked with Officer Anthony Perin. The Michigan Supreme Court denied Petitioner's appeal because it was "not persuaded that the questions presented should be reviewed" by the Court. *See* docket #19.

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 791 (2001), *cert. denied, Texas v. Penry*, 126 S. Ct. 2862 (June 12, 2006). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the

law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). "Yet, while the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (Oct. 9, 2007). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411;

*accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

Where the state court has not articulated its reasoning, the federal courts are obligated to conduct an independent review to determine if the state court's result is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. *See Harrington v. Richter*, ___ S. Ct. ___, 2011 WL 148587, at *9 (Jan. 19, 2011) (citing with approval *Harris*, 212 F.3d at 943 n.1). Where the circumstances suggest that the state court actually considered the issue, including where a state court has issued a summary affirmance, the review remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *Harrington*, 2011 WL 148587, at *9; *Harris*, 212 F.3d at 943. However, where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." In such circumstances, the court conducts *de novo* review. *McKenzie*, 326 F.3d at 727 (limiting *Harris* to those circumstances in which a result exists to which the federal court may defer); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial

court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

Petitioner asserts that the court erred by refusing to appoint substitute counsel. The Michigan Court of Appeals rejected this claim because petitioner failed to show good cause to substitute counsel.

> Defendant argues that there was good cause for the trial court to appoint substitute counsel because defense counsel was disinterested in defendant's case and merely wanted him to plead guilty to the charges. In addition, he claims that the appointment of substitute counsel would not have unreasonably disrupted the judicial process. "A trial court's decision regarding substitution of counsel will not be disturbed absent an abuse of discretion." *People v. Traylor,* 245 Mich.App. 460, 462, 628 N.W.2d 120 (2001). In *People v. Jones,* 168 Mich.App. 191, 194, 423 N.W.2d 614 (1988), the Court explained:
>
>> An indigent defendant is constitutionally guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic. [Citations omitted.]
>
> Inadequacy, lack of diligence, or disinterest on the part of the lawyer can also establish good cause. *People v. Ginther,* 390 Mich. 436, 441-442, 212 N.W.2d 922 (1973).
>
> In this case, our review of the record supports that defendant did not articulate a legitimate difference in opinion with regard to a fundamental trial tactic. See *Jones,* 168 Mich.App. at 194, 423 N.W.2d 614. Defendant also did not establish that defense counsel was inadequate, lacked diligence, or was disinterested in defendant's case. See *Ginther,* 390 Mich. at 441-442, 212 N.W.2d 922. Rather, defendant's unhappiness with defense counsel appeared to stem from

the fact that defendant's plea agreement, in a previous case, was not precisely what he thought it would be and also from the fact that defendant was incarcerated for a year after he chose to violate his probation in that case. We find that defendant being disgruntled regarding the events that transpired in his previous case does not result in a finding that defense counsel was inadequate, lacked diligence, was disinterested in this case, or disagreed with defendant regarding a fundamental trial tactic. Defendant also appeared to be unhappy with his defense counsel because he did not feel "safe" with defense counsel representing him where defense counsel suggested that defendant accept the plea agreement. However, a "defendant's mere allegation that he lacked confidence in his trial counsel is not good cause to substitute counsel." *Traylor,* 245 Mich.App. at 463, 628 N.W.2d 120. Thus, defendant's assertion that he did not feel "safe" with defense counsel does not support a finding that there was good cause to appoint substitute counsel. See *id.* Also, defense "[c]ounsel's responsibility is to provide the defendant the requisite information to allow the defendant to make an informed decision whether to plead guilty." *People v. Effinger,* 212 Mich.App. 67, 71, 536 N.W.2d 809 (1995). Thus, defense counsel's suggestion that defendant accept the plea agreement appears to reflect that defense counsel was properly executing his duty by making a recommendation to defendant after defense counsel had assessed the case. Moreover, as expressed by the trial court, "[t]he ultimate decision to plead guilty is the defendant's, and a lawyer must abide by that decision." *Id.,* citing MRPC 1.2(a). Thus, regardless whether defense counsel suggested to defendant that he should plead guilty, defendant was required to make the ultimate decision. See *id.* In addition, defendant also appeared to be unhappy with his defense counsel because, according to defendant, defense counsel did not listen when defendant tried to explain that he wanted to go to trial because there was a lack of physical evidence to support a conviction. However, we find that defense counsel was merely trying to explain to defendant that fingerprints and deoxyribonucleic acid are not required to support a conviction. Moreover, defense counsel appeared to try to explain to defendant that, in his opinion, there was sufficient evidence for a jury to find defendant guilty of the crimes based on the eyewitness identifications and other highly incriminating evidence, including the police finding one of the victim's wallets on the floorboard of the vehicle defendant was driving moments after the crime. Finally, defendant also argues that defense counsel's failure to listen to defendant became evident after jury selection when defense counsel untimely requested to add three witnesses to his witness list, which the trial court denied. Importantly, however, defendant does not argue that his trial counsel was ineffective or offer any evidence

> as to what the witnesses would have added to his defense. Defendant only argues that the trial court abused its discretion by not appointing substitute counsel, and we disagree.
>
> Defendant did not establish that his counsel was inadequate, lacked diligence, was disinterested in defendant's case, or disagreed with defendant regarding a fundamental trial tactic. See *Ginther,* 390 Mich. at 441-442, 212 N.W.2d 922; *Jones,* 168 Mich.App. at 194, 423 N.W.2d 614. Consequently, based on the record, we find that defendant did not show good cause warranting the appointment of substitute counsel. Thus, the trial court did not abuse its discretion by denying defendant's request. See *Traylor,* 245 Mich.App. at 462, 628 N.W.2d 120. Because good cause was not established, it is irrelevant whether defendant requested substitute counsel far enough in advance to not unreasonably disrupt the judicial process. See *Jones,* 168 Mich.App. at 194, 423 N.W.2d 614.

*See* docket #18, pp. 1-2.

Petitioner has failed to present any reason which could have justified a substitution of counsel. The Sixth Amendment guarantees the right to assistance of counsel in criminal proceedings to ensure that the criminal defendant receives a fair trial. *Wheat v. United States*, 486 U.S. 153, 158-159 (1988). The inquiry focuses on the adversarial relationship and whether the defendant is represented by an effective advocate, as opposed to the defendant's personal relationship with his lawyer. *Id.*, *Morris v. Slappy*, 461 U.S. 1 (1983). Petitioner has failed to show that he was represented by an ineffective advocate. The Michigan Court of Appeals' decision is supported by clearly established federal law and based on a reasonable application of the facts.

Petitioner also claims that the trial court violated his constitutional right to represent himself at trial. The Sixth Amendment, applicable to the states through the Due Process Clause of the Fourteenth Amendment, provides that a criminal defendant shall have the right to the assistance of counsel in his defense. *See* U.S. Const. amend. VI; *see also Faretta v. California*, 422 U.S. 806, 832-34 (1975)*; Martinez v. Ct. of Appeal of Cal.*, 528 U.S. 152, 154 (2000). This right necessarily

implies its corollary, that a defendant has a right to proceed without counsel and represent himself. *Faretta*, 422 U.S. at 832-34; *see also United States v. Mosely*, 810 F.2d 93, 97 (6th Cir. 1987) ("'The right to defend *pro se* and the right to counsel have been aptly described as "two faces of the same coin," in that waiver of one right constitutes a correlative assertion of the other.'") (quoting *United States v. Conder*, 423 F.2d 904, 908 (6th Cir. 1970)). "[F]orcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." *Faretta*, 422 U.S. at 817.

Given the importance of the right to counsel, however, a defendant's request for self-representation must be unequivocal and his waiver of his right to counsel and the decision to proceed *pro se* must be knowing, voluntary and intelligent. *See Faretta*, 422 U.S. at 834-35; *Johnson v. Zerbst,* 304 U.S. 458, 464-65 (1938). For any such waiver to be effective, the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). Whether a defendant's choice was made with "eyes open" generally "depend[s], in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Zerbst,* 304 U.S. at 464-65. The Supreme Court has "not prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel," *Iowa v. Tovar*, 541 U.S. 77, 88 (2004), and there is "no sacrosanct litany for warning defendants against waiving the right to counsel."[1] *United States v. Jones*, 421 F.3d 359, 363 (5th Cir. 2005). However, less

---

[1] The Court notes that the Sixth Circuit requires federal district courts within the circuit to conduct an inquiry as set forth in *1 Bench Book for United States District Judges* 1:02-2 (3d ed. 1986) before accepting a waiver of a right to an attorney. *King v. Bobby,* 433 F.3d 483, 492 (6th Cir. 2006); *United States v. McDowell*, 814 F.2d 245, 250 (6th Cir. 1987). However, this type of formal, detailed inquiry is not required by clear Supreme Court precedent. *King,* 433 F.3d at 492. Accordingly, in the context of federal habeas review, there is no script that a state court must follow in determining whether a criminal defendant has made a "knowing, voluntary, and intelligent" waiver of counsel. *Id.*

rigorous warnings are required before trial than at trial "because, at that stage, 'the full dangers and disadvantages of self-representation . . . are less substantial and more obvious to an accused than they are at trial.'" *Tovar*, 541 U.S. at 90 (quoting *Patterson v. Illinois*, 487 U.S. 285, 299 (1988)).

In addition, the Supreme Court has recognized that the right to self-representation "'is not absolute.'" *Indiana v. Edwards*, 554 U.S. 164, 171 (2008) (holding that in the context of prior issues of mental competency may permit a state to limit the right of self-representation) (quoting *Martinez*, 528 U.S. at 162). As the *Faretta* Court itself observed, "[t]he right of self-representation is not a license to abuse the dignity of the courtroom." 422 U.S. at 834 n.46 (internal quotation omitted). "[T]he government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer. *Martinez*, 528 U.S. at 162 (holding that the right of self-representation does not apply on direct appeal in a criminal case). For example, courts may require that a defendant make his request to represent himself in a timely fashion. *Id.* In addition, a court may appoint standby counsel even without the express consent of the defendant. *Id.* Nevertheless, a court is not required to appoint standby counsel or permit "hybrid" representation. *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984). Further, the trial judge need not provide personal instruction on procedure or otherwise assist the defendant. *Id.* (citing *McKaskle*, 465 U.S. at 183-84). Moreover, the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. *Faretta*, 422 U.S. at 834 n.46 (citing *Illinois v. Allen*, 397 U.S. 337, 342 (1970) (holding that a defendant's right to confront witnesses may be overcome by the defendant's engagement in disruptive conduct)).

---

Rather, the state court must reasonably apply Supreme Court precedent, which requires looking at the "whole record" to determine if the defendant made a knowing and intelligent waiver. *Id.*

Finally, "[s]ince the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to "harmless error" analysis. The right is either respected or denied; its deprivation cannot be harmless." *McKaskle*, 465 U.S. at 177 n.8; *see also Washington v. Renico*, 455 F.3d 722, 734 (6th Cir. 2006) (holding that "denial of the *Faretta* right is a structural error for which [defendant] need not show any prejudice") (citing *McKaskle*, 465 U.S. at 177 n.8).

In this case, Petitioner's motion for substitution of counsel was denied prior to trial. During a hearing on August 25, 2008, the prosecution indicated that the State had offered to let Petitioner plead to one count of first-degree home invasion and to dismiss the life offenses of assault with intent to rob while armed, as well as the felony firearm offenses. *See* docket #13, p. 3. Petitioner rejected the offer, stating:

> All right, all right yeah. Yes, yes, yes I do. I - I - I disagree to that because I had (indiscernible) I had nothing to do what happened. That's why I'm saying this, and then like I was told about this paper, to sign - I guess my charges got dropped to a - a forced entry when I checked in the computer. It got dropped to a forced entry, and then I was also sent to the Forensic Center against my will cause the first time I turned it down. I wanted to let you know that I am well competent to stand trial, and so that's why I was - that's why when he came in there and told me this, I'm like nah, I would rather - I would feel better if I represent myself at trial, and I will do that.

*Id.*, pp. 4-5.

Petitioner further stated:

> We have money for another trial - for another - we have money for a lawyer and we can get some more money, so you know, I would like for you to please accept my request to go to trial, cause I - he's not representing me to the best of his ability, and there's evidence and I have somethin' to say when I go to trial about what - what - what happened, and what's going on.

*Id.*, p. 5.

Petitioner's trial attorney then moved the court to allow Petitioner to represent himself at trial. In denying the motion, the court explained the seriousness of the charges to Petitioner, as well as the dangers of self-representation. In addition, the court noted that Petitioner's request had been "almost a conditional request," and that Petitioner actually wished to be represented by a different attorney. *Id.*, pp. 6-11.

In addressing this claim, the Michigan Court of Appeals stated:

Defendant next argues that the trial court's summary rejection of his request for self-representation was clearly erroneous. A criminal defendant's right to represent himself is implicitly guaranteed by the United States Constitution, U.S. Const, Am VI, and explicitly guaranteed by the Michigan Constitution and statute, Const 1963, art 1, § 13; MCL 763.1. *People v. Kevorkian,* 248 Mich.App. 373, 417, 639 N.W.2d 291 (2001). However, this right is not absolute. *People v. Anderson,* 398 Mich. 361, 366-368, 247 N.W.2d 857 (1976). Four findings must be made by a trial court before making a determination that a defendant can represent himself at trial. *People v. Russell,* 471 Mich. 182, 190-191, 684 N.W.2d 745 (2004). The Court in *Russell* set forth the first three requirements as follows:

> Upon a defendant's initial request to proceed pro se, a court must determine that (1) the defendant's request is unequivocal, (2) the defendant is asserting his right knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business. [ *Id.* at 190, 684 N.W.2d 745.]

The fourth requirement requires a trial court to comply with the pertinent portions of MCR 6.005(D). *Id.* at 190-191, 684 N.W.2d 745. The trial court need only substantially comply with the four requirements outlined above, and if the court is uncertain regarding whether any of the waiver procedures are met, it " 'should deny the defendant's request to proceed in propria persona, noting the reasons for the denial on the record.' " *Id.* at 191, 684 N.W.2d 745, quoting *People v. Adkins (After Remand),* 452 Mich. 702, 726-727, 551 N.W.2d 108 (1996), abrogated in part on other grounds by *People v.*

*Williams,* 470 Mich. 634, 641 n. 7, 683 N.W.2d 597 (2004) (emphasis omitted).

> Although engaging in a de novo review of the entire record ..., this Court does not disturb a trial court's factual findings regarding a knowing and intelligent waiver of [Sixth Amendment] rights unless that ruling is found to be clearly erroneous. Credibility is crucial in determining a defendant's level of comprehension, and the trial judge is in the best position to make this assessment.
>
> Although we review for clear error the trial court's factual findings regarding a defendant's knowing and intelligent waiver of [Sixth Amendment] rights, ... the meaning of knowing and intelligent is a question of law. We review questions of law de novo.
>
> Thus, the reviewing court is not free to simply substitute its view for that of the trial court, but must be careful to respect the trial court's role in determining factual issues and issues of credibility. [ *Williams,* 470 Mich. at 640-641, 683 N.W.2d 597 (internal quotation marks and citations omitted).]

We find on the record before us that defendant's request to represent himself was not unequivocal. Defendant's request appeared to be made in the alternative, or as the trial court noted, conditionally. The condition was the trial court's determination whether defendant could receive substitute counsel. At the pre-trial status conference that took place after the trial court had denied defendant's request for the appointment of substitute counsel, defendant informed the judge that he was rejecting the prosecution's plea offer, and indicated that when his attorney told him about the offer, "I'm like nah, I would rather-I would feel better if I represent myself at trial, and I will do that." Defendant immediately continued, "[w]e have money for another trial-for another-we have money for a lawyer and we can get some more money, so you know, I would like for you to please accept my request to go to trial, cause I-he's not representing me to the best of his ability, and there's evidence and I have somethin' to say when I go to trial about what-what-what happened, and what's goin' on." Given these statements and similar ones defendant made at the time his request for the appointment of substitute counsel was denied, defendant appeared to be more desirous of going to trial with a substitute appointed attorney or his own retained attorney rather than

> to actually represent himself at trial. In addition, we find that the record does not provide a basis for concluding that defendant's request for self-representation was knowingly and intelligently made. Consequently, we find that the trial court correctly denied defendant's request for self-representation because every reasonable presumption should be against waiver and two of the four elements for waiver were not met. See *Russell,* 471 Mich. at 191-192, 684 N.W.2d 745.

Docket #18, pp. 3-4.

The undersigned concludes that the Michigan Court of Appeals' decision on this issue did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In Petitioner's third claim, he asserts that the trial court erred in scoring offense variable 8 at 15 points, rather than 0. Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cheatham v. Hosey*, No. 93-1319, 1993 WL 478854, at *2 (6th Cir. Nov. 19, 1993) (departure from sentencing guidelines is an issue of state law, and, thus, not cognizable in federal habeas review); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). There is no constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978).

Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005) (citing *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003)). *See also Doyle*, 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Koras,* 123 F. App'x at 213 (quoting *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

>In addressing this claim, the Michigan Court of Appeals stated:

>Defendant lastly argues that the trial court erred in assessing offense variable (OV) 8 at 15 points because the victims were not asported to another place of greater danger. MCL 777.38(1)(a). A trial court's calculation of the recommended minimum sentence range under the legislative guidelines is reviewed to determine "whether the trial court properly exercised its discretion and whether the record evidence adequately supports a particular score." *People v. McLaughlin,* 258 Mich.App. 635, 671, 672 N.W.2d 860 (2003). The record evidence in this case supports the trial court's finding that Cooper, Patterson, and Patterson's baby were asported to another place of greater danger or to a situation of greater danger. See, e .g., *People v. Hack,* 219 Mich.App. 299, 313, 556 N.W.2d 187 (1996); *People v. Piotrowski,* 211 Mich.App. 527, 529, 536 N.W.2d 293 (1995). As defendant and his cohort entered the house, the victims entered the baby's bedroom. Patterson and her baby hid in the closet, McCord hid by the changing table, and Cooper tried to hold the bedroom door shut. The bedroom door was pushed in and Cooper was taken into the living room at gunpoint. As she was being moved from the bedroom to the living room, Cooper tried to walk toward the back door, but defendant's cohort saw her and said, "Don't move or I'll blow your-your back out bitch." Cooper was robbed and forced to lie on the floor on her stomach. Patterson and her baby were removed from the bedroom closet and forced at gunpoint into the hallway, where Patterson was required to sit because she could not lay on the floor while holding her baby. In being removed from behind the closed door of a bedroom, separated, forced onto the floor, and held at gunpoint, the victims were placed in situations of greater danger. Because "[s]coring decisions for which there is any evidence in support will be upheld," *People v. Elliott,* 215 Mich.App. 259, 260, 544 N.W.2d 748 (1996), we find that the trial court did not abuse its discretion by scoring 15 points for OV 8.

Docket #18, pp. 4-5.

Petitioner has failed to show that the trial court relied on false information in scoring offense variable 8. Petitioner does not assert that the information relied on by the sentencing court was incorrect, rather he contends that it did not support the scoring of offense variable 8 as a matter of state law. As noted above, such a claim does not rise to the level of a constitutional violation. Therefore, Petitioner's third claim for habeas corpus relief is properly denied.

Finally, Petitioner claims that the trial court erred in failing to dismiss a juror who worked with testifying police officer Anthony Perin. Petitioner failed to raise this issue in his direct appeal to the Michigan Court of Appeals, but raised it for the first time in his application for leave to appeal to the Michigan Supreme Court. Presentation of an issue for the first time on discretionary review to the state supreme court does not fulfill the requirement of "fair presentation." *Castille v. Peoples*, 489 U.S. 346, 351 (1989). Applying *Castille*, the Sixth Circuit holds that a habeas petitioner does not comply with the exhaustion requirement when he fails to raise a claim in the state court of appeals, but raises it for the first time on discretionary appeal to the state's highest court. *See Dunbar v. Pitcher*, No. 98-2068, 2000 WL 179026, at *1 (6th Cir. Feb. 9, 2000); *Miller v. Parker*, No. 99-5007, 1999 WL 1282436, at *2 (Dec. 27, 1999); *Troutman v. Turner*, No. 95-3597, 1995 WL 728182, at *2 (6th Cir. Dec. 7, 1995); *accord Parkhurst v. Shillinger*, 128 F.3d 1366, 1368-70 (10th Cir. 1997); *Ellman v. Davis*, 42 F.3d 144, 148 (2d Cir. 1994); *Cruz v. Warden of Dwight Corr. Ctr.*, 907 F.2d 665, 669 (7th Cir. 1990). Unless the state supreme court actually grants leave to appeal and reviews the issue, it remains unexhausted in the state courts. Petitioner's application for leave to appeal was denied, and, thus, the issue was not reviewed.

Petitioner seeks a stay in this court to allow him to file a motion for relief from judgment raising his unexhausted fourth claim in the state courts. Under *Rhines v. Weber*, 544 U.S. 269 (2005), such a stay should only be granted if (1) there is good cause for Petitioner's failure to exhaust the unexhausted claims, (2) the unexhausted claims are not plainly meritless, and (3) there is no indication that Petitioner has engaged in abusive or dilatory litigation tactics. *Id.* at 277-78.

The record in this case shows an utter lack of support for Petitioner's claim regarding a biased juror. During voir dire, potential juror 13 admitted to knowing Danielle McCord and possibly police officer Brett Weiss. However, when juror 13 discovered that Weiss was a police

officer, he realized he was mistaken and that he did not know him. Moreover, juror 13 was dismissed from service with one of the State's peremptory challenges. *See* docket #14, pp. 15-17, 32.

Potential juror 7 was employed by the City of Battle Creek and came into contact with police officers in the course of his job, specifically officer Chad Fickle. Officer Fickle did not testify at trial. Moreover, juror 7 was excused from service by Petitioner's attorney. *Id.*, pp. 31, 39. Potential juror 1 also stated that she had contact with police officers as part of her job, but she was excused for cause at Petitioner's request. *Id.*, pp. 34-35. Potential juror 4 admitted to being friends with some of the witnesses, and stated that it would be difficult for her to be fair and impartial. Juror 4 was excused by the court from service. *Id.*, pp. 37-38. None of the potential jurors in this case stated that they were acquainted with Officer Perin. In addition, all of the potential jurors that admitted knowing Battle Creek police officers were dismissed from service on the jury.

The undersigned concludes that Petitioner's fourth claim for habeas corpus relief is entirely meritless. Therefore, Petitioner's request for a stay so that he can exhaust this claim in the state courts is properly denied.

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: December 22, 2014

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).